UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEPHEN GASCOIGNE AND KELLY GASCOIGNE, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF AD.G. AND AB.G., BOTH MINORS, | ) ) ) ) ) ) ) | C.A. NO. 04 CV 11168 JLA |
| Plaintiffs, | ) ) |  |
| vs. | ) ) |  |
| WEQUASSETT INN LLP (a registered limited liability partnership, by and through its individual partners), d/b/a THE WEQUASSETT INN RESORT AND GOLF CLUB | ) ) ) ) ) ) |  |
| Defendant. | ) ) |  |

**<u>PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION AND ON THE ISSUE OF CAUSATION</u>**

**I. <u>ABBREVIATED FACTUAL BACKGROUND</u>[1]**

This action arises from tortious and other conduct by the employees, servants, agents and/or officers of Wequassett Inn LLP within the Commonwealth of Massachusetts on or about July 6, 2001, at the Wequassett Inn Resort and Golf Club (hereinafter, the WEQUASSETT INN) on Pleasant Bay, Harwich [Chatham], Barnstable County, Massachusetts. At all times material to this action, the Defendant Wequassett Inn LLP owned, operated, managed, and staffed the WEQUASSETT INN.

The Plaintiffs Stephen and Kelly Gascoigne attended the July 6, 2001 wedding of Scott Dien and Rebecca Dupont, both California residents and domiciliaries, at the WEQUASSETT

---

[1] The Plaintiffs have provided and also rely upon the more detailed and comprehensive statement of undisputed material facts contained in Plaintiffs' Concise Statement Of Undisputed Material Facts As To Which There Is No Genuine Issue To Be Tried, which is filed separately herewith.

INN, as well as the dinner/reception which followed (hereinafter, the Dien-Dupont wedding and dinner/reception). As a result of improper food handling practices on the part of the employees, servants, agents, and other workers of the Defendant Wequassett Inn LLP, a Salmonella outbreak occurred, causing the Plaintiff Stephen Gascoigne to become violently ill and to develop reactive arthritis, a progressively crippling and debilitating arthritic process for which there is no present cure.

The Massachusetts Department of Public Health (hereinafter, MPH) and the Harwich Board of Health (hereinafter, HBOH) investigated these complaints at the WEQUASSETT INN which resulted from the events of July 6, 2001. MPH and HBOH also conducted a statistical analysis of stool samples obtained from and questionnaires completed by a large number of the Dien-Dupont wedding guests and Invest To Compete participants. Forty-six Dien-Dupont wedding reception/dinner attendees and fifteen Invest To Compete attendees reported becoming ill following the dinner meal that was served at both functions. MPH and HBOH determined that there had been a Salmonella outbreak and that the strain of Salmonella involved was Salmonella enteritidis (SE). MPH and HBOH concluded that the béarnaise sauce that was prepared and served on July 6, 2001, at both events was made wholly or in part with unpasteurized eggs contaminated with Salmonella enteritidis. An alternative explanation suggested by the MPH and HBOH for the Salmonella outbreak was that at least three of the Wequassett Inn food handlers at the events were already infected with Salmonella enteritidis bacteria and that one or more than one of these food handlers contaminated the food for the two functions, including the béarnaise sauce, as it was being prepared and served. This phenomenon of transmission is known as cross-contamination. MPH submitted certain stool samples which had been obtained to the Centers for Disease Control and Prevention (hereinafter, "CDC") for testing. By means of a memorandum dated December 5, 2001, Johnson G. Nsubuga of the Division of Epidemiology and Immunization

of MPH announced that the test results showed that the Salmonella enteritidis isolated from the stool samples of the food handlers, the ill members of the Dien-Dupont wedding party, and the ill investment group attendees was identical (phage type 8). According to Mr. Nsubuga, the CDC findings further confirmed that the Salmonella enteritidis organism was either introduced as a result of contamination during food preparation or service by a food handler, or was present in the food that was served at both functions at the Wequassett Inn.

## II. PROCEDURAL HISTORY

As set forth in the Second Amended Complaint, the Plaintiffs seek to recover against the Defendant for (a) breach of warranty as set forth in Mass. G.L. c.106, §2-314(1) [Plaintiffs' First Cause of Action]; (b) violations of Mass. G.L. c.93A [Plaintiffs' Second Cause of Action]; and (c) negligence [Plaintiffs' Third Cause of Action]. The subject of this motion for partial summary judgment are the first two causes of action.

The Plaintiffs submit that the uncontroverted evidence and testimony in this case clearly establishes that:

(a) the Plaintiff Stephen Gascoigne attended the Dien-Dupont wedding reception and dinner;

(b) while at the wedding reception and dinner, the Plaintiff Stephen Gascoigne consumed tainted or contaminated food unfit for consumption prepared and served to him there by the employees of the Defendant Wequassett Inn LLP;

(c) in particular, the Plaintiff Stephen Gascoigne consumed the béarnaise sauce that was served at the wedding reception and dinner;

(d) the Plaintiff Stephen Gascoigne contracted Salmonella enteritidis as a result of consuming said tainted or contaminated food; and

(e) the Plaintiff Stephen Gascoigne subsequently developed reactive arthritis as a direct and proximate result of contracting Salmonella enteritidis.

In accordance with the provisions of Mass. G.L. c. 106, § 2-314(1), the sale or serving for value of food and drink, whether to be consumed on the premises or elsewhere, created an implied

warranty of merchantability and an implied warranty of fitness for a particular purpose within the Commonwealth of Massachusetts. The Defendant Wequassett Inn LLP, acting through its employees, servants, agents, workers, and officers, breached these implied warranties as the food served to and consumed by the Plaintiff Stephen Gascoigne at the Dien-Dupont wedding was not of fair and average quality and was not fit for the ordinary purposes for which food such as that was used or intended. As a direct and proximate result of consuming adulterated contaminated, tainted, unfit, and Salmonella infected food at the Dien-Dupont wedding served to him and prepared by the employees, servants, agents, workers, and officers of the Defendant Wequassett Inn LLP, the Plaintiff Stephen Gascoigne became seriously ill and ultimately developed reactive arthritis.

Mass. G.L. c. 93A, § 1 et. seq. (the Massachusetts Consumer Protection Act) prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Mass. G.L. c. 93A, § 2(a). Mass. G.L. c. 93A, § 2(c), authorized the Attorney General of Massachusetts to promulgate rules and regulations interpreting and facilitating the enforcement of Mass. G.L. c. 93A, § 2(a). Pursuant to his statutory authority, the Attorney General of Massachusetts has promulgated numerous regulations interpreting Mass. G.L. c. 93A. Among these are 940 C.M.R. § 3.08(2), which provides that "[i]t shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty." As defined in 940 C.M.R. § 3.01, the term "warranty" explicitly includes the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. In addition, 940 C.M.R. § 3.16(3) provides that violation of a statute, rule, regulation or law "meant for the protection of the public's health, safety, or welfare" is a violation of Mass. G.L. c. 93A, § 2.

Mass. G.L. c. 94, § 150, prohibits the selling or offering for food or drink "any diseased animal or product thereof or any tainted, diseased, corrupt, decayed or unwholesome carcass,

meat, vegetable, produce, fruit or provisions of any kind" without making the condition of the thing sold or offered for sale fully known to the buyer."

Mass. G.L. c. 94, § 150 is a statute or law "meant for the protection of the public health, safety, or welfare."

At all times material to this action, the Defendant Wequassett Inn LLP was engaged in trade or commerce within the Commonwealth of Massachusetts.

The conduct of the employees, servants, agents, workers, and officers of the Defendant Wequassett Inn LLP as described throughout this Complaint constitutes (i) a violation of regulations promulgated by the Attorney General of Massachusetts in accordance with Mass. G.L. c. 93A, § 2(c), (ii) a breach of warranty, (iii) a violation of a statute or law "meant for the protection of the public health, safety, or welfare", (iv) an unfair or deceptive act or practice, and (v) an unfair method of competition.

The conduct of the employees, servants, agents, workers, and officers of the Defendant Wequassett Inn LLP constitutes a violation of Mass. G.L. c. 93A, § 2.

The Plaintiff Stephen Gascoigne is a person who is aggrieved by the Defendant Wequassett Inn LLP's violation of Mass. G.L. c. 93A, § 2.

As a direct and proximate result of the Defendant Wequassett Inn LLP's violation of Mass. G.L. c. 93A, § 2, the Plaintiff Stephen Gascoigne has been injured and has suffered monetary loss.

There are no genuine issues of material fact which would require denial of the Plaintiffs' motion for summary judgment on these two causes of action and which would require resolution at trial.

In support of their motion, the Plaintiffs rely upon (a) their concise statement of the material facts of record as to which there is no genuine issue to be tried, (b) statement of undisputed principles and elements of Massachusetts substantive law and facts applied to

Massachusetts substantive law; (c) their brief, and (d) the affidavit of Donald L. Gibson, Esquire, and the various exhibits, deposition excerpts, discovery materials, and affidavits attached thereto.

### III.  LEGAL ANALYSIS

### III.A.  Summary Judgment Standard and Principles

The purpose of summary judgment is "to pierce the pleadings and to assess the proof to see whether there is a genuine need for trial".  Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).  Summary judgment is appropriate in federal litigation under "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law".  Fed. R. Civ. P. 56(c).

A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists.  Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 505 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed. 2d 255 (1995); U.S. v. President and Fellows of Harvard College, et al, 323 F.Supp. 2d 151, 162 (D.Mass. 2004).  Once the movant has made such a showing, the non-movant must point to specific facts demonstrating that there is, indeed, a trialworthy issue.  Nat'l Amusements, Inc., 43 F.3d at 735; Maldonado-Denis v. Catillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994); U.S. v. President and Fellows of Harvard College, 323 F.Supp. at 162.

### III.B.  Material Fact Defined

In federal court, a fact is "material" for purposes of defeating a motion for summary judgment only if it has the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000); Nat'l Amusements, Inc., 43 F.3d at 735.  To establish a genuine issue of material fact, one must present

something more than effusive rhetoric and optimistic surmise. Cadle Company v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Summary judgment is very much appropriate if the evidence adduced in opposition to the motion is merely colorable, conjectural, problematic or not significantly probative. Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed 2d 202 (1986); Cadle Company v. Hayes, 116 F.3d at 960; Mack v. Great Atl. & Pac. Tea Co., 871, F.2d 179, 181 (1st Cir. 1989). The First Circuit Court of Appeals has made it abundantly clear that a well taken motion for summary judgment cannot be defeated by "conclusory allegations, improbable inferences, and unsupported speculation". Cadle Company, 116 F.3d at 960; Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Factual disputes that are irrelevant or unnecessary will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

### III.C.  Massachusetts Food Warranties

Mass. G.L. c. 106, §2-314(1) creates an implied warranty of merchantability regarding the serving for value of food or drink to be consumed either on the premises or elsewhere. That section provides in pertinent part:

> **§ 2-314.  Implied Warranty:  Merchantability; Usage of Trade**
>
> (1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

Thus, under the facts and circumstances of this case, the Defendant Wequassett Inn impliedly warranted that food items which its employees served to the Plaintiff Stephen Gascoigne were of merchantable quality. Delano Growers' Co-Op v. Supreme Wine Co., 393 Mass. 666, 473 N.E.2d 1066, 1071 (1985); Regina Grape Prods. Co. v. Supreme Wine Co., 357 Mass. 631, 635, 260 N.E.2d 219, 221-222 (1970).

To be "merchantable" under Massachusetts law, the food that was served to the Plaintiff Stephen Gascoigne at the Dien-Dupont wedding and dinner/reception on July 6, 2001, had to, among other things:

(a) pass without objection in the trade under the contract description [Mass. G.L. c.106, §2-314(2)(a)];

(b) in the case of fungible goods, be of fair average quality with the description [Mass. G.L. c.106, §2-314(2)(b)]; and

(c) be fit for the ordinary purpose for which such goods are used [Mass. G.L. c.106, §2-314(2)(c)].

Thus, selling food unfit for consumption in Massachusetts is a breach of the implied warranty of fitness for ordinary purposes; to wit: eating. Friend v. Childs Dining Hall Co., 231 Mass. 65, 71-76, 120 N.E. 407, 407-411 (1918) (A restaurant, which supplied its guest, for immediate consumption, baked beans containing stones, was liable for breach of its implied warranty of fitness for consumption); Ward v. Great Atlantic & Pacific Tea Co., 231 Mass. 90-95, 120 N.E. 225, 225-227 (1918) (pebbles in a can of baked beans purchased from defendant rendered the baked beans unfit for consumption); McSweeney v. McDonald's Corp., 1991 Mass. App. Div. 197 (1991) [Not reported in N.E.2d] (Plaintiff entitled to damages on theories of negligence and breach of warranty where he contracted campylobacter food poisoning as a result of eating three cheeseburgers sold by the defendant); O'Brien v. Dora Ferguson Catering, Inc., 1988 Mass. App. Div. 151 (a seller of food impliedly warrants that the food is fit to be eaten); Primak v. Star Market Company, 38 Mass. App. Dec 218, 219 [Not reported in N.E. 2d] (Sale of a salami for human consumption in which is embedded a piece of metal is a breach of the implied warranty of fitness for which the seller is liable to the purchaser for all injury or damage proximately resulting from the purchaser's attempt to consume the salami); Wernick v. Bob Ware's Food Shops, Inc., 27 Mass. App. Dec. 19, 20-24 [Not reported in N.E. 2d] (Presence of a date pit in a package of

8

dates sold as pitted dates renders a muffin containing the date pit which broke the plaintiff's tooth unfit for human consumption and therefore unmerchantable).

In determining whether a breach of a warranty has occurred when a consumer is injured by a substance in food, the Supreme Judicial Court of Massachusetts has adopted the "reasonable expectations" test as opposed to the "foreign substance-natural substance" test. Writing for the Court in the leading case of Phillips v. Town of West Springfield, 405 Mass. 411, 412-413, 540 N.E.2d 1331, 1332-1333 (1989), Justice Wilkins reasoned that:

> [t]he reasonable expectations test has been generally recognized as preferable to the foreign substance-natural substance test. (Citations omitted). The foreign substance-natural substance test exonerates a seller of food from liability for the lack of fitness of the food for ordinary purposes simply because the injury causing substance was natural to the food. It fails to focus the seller's attention on the consumer's reasonable beliefs and to recognize that sellers may fairly be held responsible in some instances for natural substances in food that cause injury. This court's discussion in its *Webster* opinion focused on the reasonable expectations of a consumer of fish chowder and concluded, as a matter of law, that bones in fish chowder should reasonably be expected. *Webster v. Blue Ship Tea Room, Inc.*, supra, 347 Mass. at 426, 198 N.E.2d 309. In our view, the reasonable expectations test is the appropriate one to apply in determining liability for breach of warranty of merchantability under G.L. c.106, §2-314(2)(c), by reason of a bone or other substance in food that caused harm to a consumer.

The consumer expectation test established in Phillips, supra, relies on culturally defined, widely shared standards that food products ought to meet. Restatement Third, Torts (Product Liability) §7, Comment b. The pertinent reasonable expectations are those of the ordinary purchaser of the type who purchases the product in question. Phillips, 540 N.E.2d at 1333, n.3. See, Williams v. Roche Brothers Supermarkets, Inc., 1999 Mass. App. Div. 174 [Not reported in N.E.2d] (Customer who purchased chicken dinner at supermarket could reasonably expect that maraschino cherry used as garnish would be free of pits, and thus could recover for breach of implied

warranty under Massachusetts version of the Uniform Commercial Code after he suffered a broken tooth on pit in cherry).

In the instant case, as an ultimate consumer, the Plaintiff Stephen Gascoigne had every right to reasonably expect that the food served to him at the Wequassett Inn as part of the Dien-Dupont wedding and dinner/reception would be wholesome, fit for human consumption, and free from harmful Salmonella enteritidis bacteria.

### III.D.  Factors Which The Massachusetts Courts Consider Regarding The Issue Of Causation In Food Contamination Cases

To recover, the Plaintiff Stephen Gascoigne does not need to exclude every other possible cause of his Salmonella illness and his reactive arthritis.  His is required only to show that the probable cause was the unwholesomeness of the food in question.  Flynn v. Growers Outlet, Inc., 307 Mass. 373, 376, 30 N.E.2d 250, 252 (1940); Johnson v. Kanavos, 296 Mass. 373, 375-376, 6 N.E.2d 434, 436 (1937); Monahan v. Economy Grocery Stores Corp., 282 Mass. 548, 540, 185 N.E. 34, 35 (1933).

In determining whether the Plaintiff in a food contamination case has satisfied the issue of causation, Massachusetts courts have often considered the presence or absence of some or all of the following factors:

(a)   direct evidence that the defendant's food was tested and found to contain Salmonella bacteria [Denaro v. 99 Restaurant, Inc., 2002 WL31546120 (Mass. App. Div.) (Not reported in N.E.2d 2002)];

(b)   expert opinion as to causation [Barfield v. F.W. Woolworth Co., 329 Mass. 641, 642, 110 N.E.2d 103, 104 (1953); Schuler v. Union News Co., 295 Mass. 350, 4 N.E.2d 465, 466 (1936)];

(c)   proof that other patrons who ate the same food had also contracted Salmonella poisoning at the defendant's restaurant [Johnson v. Kanavos, 296 Mass. 373, 375-376, 6 N.E.2d 434, 435 (1937)];

(d)   evidence that the food had an abnormal or unwholesome appearance, taste or color [Flynn v. Growers Outlet, Inc., 307 Mass. 373, 376, 30 N.E.2d 250, 252 (1940); Johnson v. Kanavos, 296 Mass. 373, 375-376, 6 N.E.2d 434, 435 (1937)]; and

    (e)    the incubation period for Salmonella is consistent with the onset of the Plaintiff's symptoms [<u>Gracey</u> v. <u>Waldorf System, Inc.</u>, 251 Mass. 76, 78-79, 146 N.E. 232, 233 (1925)].

The Plaintiffs in the instant case have demonstrated without doubt the presence of four of these factors and for that reason summary judgment should be granted. First, there is direct evidence of the food borne Salmonella enteritidis outbreak at the Wequassett Inn which is uncontroverted having been so determined by the MPH, the HBOH, and the CDC, public health agencies to whose reports, conclusions and findings this Court should defer for purposes of determining whether a genuine dispute of material fact exists with respect to the liability of the Defendant Wequassett Inn LLP. While the Plaintiff concedes that it would be for the trier of fact to determine what evidential "weight" should ultimately be given to the contents of such reports, conclusions, and findings [see, e.g., <u>Whiting</u> v. <u>Boston Edison Company</u>, 891 F.Supp. 12, 22, n.44 (1995); <u>Aspinall</u> v. <u>Philip Morris Companies, Inc.</u>, 442 Mass. 381, 388, N.16, 813 N.E.2d 476, 482, n.16 (2004); <u>Morrissey</u> v. <u>Lieberman</u>, 19 Mass. L. Rptr. 655, 2005 WL200943 (Mass. Super. Ct.) [Not reported in N.E.2d] (Pages*2-*3, and *6 of slip opinion)] the salient point is that there is absolutely no evidence anywhere in the record, nor reasonable inference which can be drawn, to dispute the findings and conclusions that the Salmonella enteritidis organism in question was either introduced in this case as a result of contamination during food preparation or service by a food handler, or was present in the food that was served at both July 6, 2001 functions at the Wequassett Inn.

While the Defendant Wequassett Inn LLP wishes to challenge some of the factual assumptions upon which said MPH, HBOB, and CDC reports, findings, and conclusions are based, the defense admits that:

    (a)    The Defendant Wequassett Inn LLP does not have any expert testimony that the Plaintiff Stephen Gascoigne contracted Salmonella induced reactive arthritis from a source other than the food prepared by and served to him by the Defendant's

11

    employees, servants, agents, workers or staff at the Dien-Dupont wedding reception and dinner [Response No. 22] [Exhibit 10].

 (b) The Defendant Wequassett Inn LLP does not have any factual information that the Plaintiff Stephen Gascoigne contracted Salmonella induced reactive arthritis from a source other than the food prepared by and served to him by the Defendant's employees, servants, agents, workers or staff at the Dien-Dupont wedding reception and dinner [Response No. 23] [Exhibit 10].

 (c) The Defendant Wequassett Inn LLP does not have any lay witness testimony that the Plaintiff Stephen Gascoigne contracted Salmonella induced reactive arthritis from a source other than the food prepared by and served to him by the Defendant's employees, servants, agents, workers or staff at the Dien-Dupont wedding reception and dinner [Response No. 24] [Exhibit 10].

 The defense has retained no epidemiologist, nor public health expert, to dispute the reports, findings, and conclusions of these governmental agencies.  The undisputed and uncontroverted facts are that the strain of Salmonella enteritidis (SE) isolated from the stool samples of the Wequassett Inn food handlers, the ill members of the Dien-Dupont wedding party, and the ill investment group attendees was identical (phage type 8).  No matter how the Salmonella enteritidis bacteria was actually introduced to both functions, service of food for value by the Defendant Wequassett Inn LLP that is laden with SE is a breach of warranty, and no trial is necessary to establish that point.  Such food is unfit for human consumption.

 Second, in addition to the reports, conclusions, and findings of these public health agencies, the Plaintiff has uncontroverted medical evidence from the three rheumatologists who have treated the Plaintiff as to the course of his complaints and symptoms.  Drs. Van Belois, Kowalewski, and Bluestone all agree that he is suffering from reactive arthritis which arose from his consumption of contaminated food on July 6, 2001, at the Wequassett Inn [Exhibits 5, 6, and 7].  Dr. Bluestone has placed his findings and conclusions in affidavit form [Exhibit 8].  Even Dr. Kalish -- the defendant's own medical expert -- agrees that the diagnosis of Salmonella induced reactive arthritis is probable [Exhibit 9 and Exhibit 11, Responses No. 19, 20, and 21].

Third, the Plaintiff has proof that other persons who ate and were served the same food also contracted Salmonella at the Wequassett Inn. In addition to those persons identified in the report of the Massachusetts Department of Public Health, the Plaintiff has submitted deposition testimony of the following persons who became ill as a result of attending the Dien-Dupont wedding and dinner/reception:

(i) Andre Dupont, the father of the bride Rebecca Dupont [became ill approximately 36 hours after the dinner/reception and eventually suffered fever, chills, painful abdominal cramping with explosive diarrhea, nausea, muscle aches, and weakness] [had béarnaise sauce] (Depo. Tr. of Andre Dupont, P27, L9-P29, L14) [Exhibit 17].

(ii) Lou Ann Dien, mother of the groom Scott Dien [became ill morning and afternoon of July 7, 2001, and eventually suffered headaches, muscle aches, dizziness, fever, chills, fatigue, nausea, diarrhea, vomiting, weakness, burning sensation in mouth, cramping, and excruciating abdominal pain] (Depo. Tr. of Lou Ann Dien, P57, L16-P103, L9; P107, L22-P113, L1) [Exhibit 18].

(iii) Rudolph Dien, father of the groom Scott Dien [became ill the night of July 7, 2001, and eventually suffered diarrhea, achiness, fever, chills, wheezing, dizziness, headaches, fatigue, and abdominal cramping (Depo. Tr. of Rudolph S. Dien, P28, L20-P29, L10; P32, L22-P33, L20; P34, L10-16; P37, L19-P38, L2; P38, L24-P40, L23; P42, L19-P43, L3; P46, L14-24; P51, L9-P52, L4; P61, L21-P64, L18) [Exhibit 19].

(iv) John T. Gmelich, M.D., wedding guest [became ill the afternoon of July 7, 2001, and eventually experienced explosive diarrhea, malaise, muscle aches, chills, fever, headaches, fatigue, vomiting, abdominal cramping, sore and raw perineal area] (Depo. Tr. of John T. Gmelich, M.D., P52, L21-P53, L10; P54, L4-P55, L13; P56, L3-P57, L9) [Exhibit 20].

(v) Dolores Rose, wedding guest [became ill the morning of July 8, 2001, and eventually experienced stomach cramps, tender skin, fever, diarrhea, abdominal cramping, and weakness] (Depo. Tr. of Dolores Rose, P25, L9-P26, L6; P27, L19-P28, L8; P29, L18-23) [Exhibit 21].

Fourth, as stated above, the incubation period for the Plaintiff's Salmonella induced symptoms and complaints was consistent with others who became ill after attending the Dien-Dupont wedding and dinner/reception.

13

### III.E.  The Defendant's Breach Of Warranty Should Be Regarded As A Violation Of Mass. G.L. c.93A

Generally, in Massachusetts, a "breach of warranty constitutes a violation of G.L. c.93A." Maillet v. ATF-Davidson Co., 407 Mass. 185, 193, 552 N.E.2d 95, 100 (1990).  The Court in Maillet held that an employee who suffered personal injury could assert a claim under Chapter 93A for breach of the implied warranty of merchantability against the manufacturer of a printing press who had sold the press to his employer.  Accord Glyptal, Inc. v. Engelhard Corp., 801 F.Supp. 887, 899 (D.Mass.1992) ("Breaches of express and implied warranties constitute a virtual per se violation of [G.L. c.93A, §2]". (citation omitted)); Alcan Aluminum Corp. v. Carlton Aluminum of New England, Inc., 35 Mass. App. Ct. 161, 169, 617 N.E.2d 1005, 1010 (1993) ("[seller] had committed a breach of its implied and express warranties to [buyer], thereby violating G.L. c.93A, §2").  See also American Shooting Sports Council, Inc. v. Attorney General, 429 Mass. 871, 877-78, 711 N.E.2d 899, 904 (1999) (Attorney General's authority to regulate handguns arises from his authority to "to regulate the sale of products that are unsafe or defective in ways that a purchaser cannot foresee"; these products fail to conform to standards of merchantability and, in some cases, standards of fitness for a particular use); Kyte v. Philip Morris, Inc., 408 Mass. 162, 171, 556 N.E.2d 1025, 1030 (1990) (denying cigarette manufacturer's motion for summary judgment on a Chapter 93A count where plaintiffs' Chapter 93A claim was based on an alleged breach of implied warranty of merchantability).

However, even if the Court is hesitate to view the Defendant's violation of a warranty arising under Mass. G.L. c.106, §2-314 as a per se violation of Mass. G.L. c.93A [See, e.g., Darviris v. Petros, 442 Mass. at 282-84 (violation of Patient's Bill of Rights, G.L. c.111, §70E, does not constitute violation of 93A, given comprehensive medical malpractice scheme enacted to provide remedy); Declersaint v. Federal Nat'l Mortgage Ass'n., 427 Mass. 809, 814-15 (1998) (violation of G.L. c.183, §27, governing disposition of mortgage foreclosure surplus, was not a

violation of Chapter 93A where there was no unfairness or deception involved); Lewis v. Walcott, 47 Mass. App. Ct. 394, 398 (1999) (violation of rent control ordinance not automatically violation of 93A if not unfair or deceptive); Quinn v. Rent Control Bd. of Peabody, 45 Mass. App. Ct. 357, 284, rev. den., 428 Mass. 1109 (1998) (technical breach of statute requiring certain notice to tenants was not automatically 93A violation, where defendants' conduct not unfair or deceptive); Atwood v. Best Buick, Inc., 21 Mass. App. Ct. 70, 74 (1985) (dealer's technical violation of regulation requiring written acknowledgement of buyer's revocation not 93A violation where not causally related to buyer's loss); Dow v. Lifeline Ambulance Service, Inc., 5 Mass. L. Rptr. 520, 1996 WL1186916 (Mass. Sup. Ct. July 3, 1996) (Cowin, J.) (automobile accident was not a violation of 93A where although defendant may have violated a statute or ordinance enacted to protect the public safety, it was merely negligent, not unfair or deceptive). Cf. Brunelle v. W.E. Aubuchon Co., Inc., 60 Mass. App. Ct. 626, 628 (2004) (declining to decide whether violation of building code is per se 93A violation).], the Court should be mindful that the events and circumstances of this case also constitute a violation by the Defendant of Mass. G.L. c.94, §150, which prohibits the selling or offering food or drink "any diseased animal or product thereof of any trained, diseased, corrupt, decayed or unwholesome carcass, meat, vegetable, produce, fruit or provisions of any kind without making the condition of the thing sold or offered for sale fully known to the buyer".

Mass. G.L. c.94, §150 is a statute or law "meant for the protection of the public's health, safety, or welfare". 940 C.M.R. §3.08(2). The purpose of said statute is penal in nature and is intended to punish the sale or unwholesome food without regard to whether the seller knew the food to be unwholesome or not. Commonwealth v. Economy Grocery Stores Corp., 313 Mass. 70, 71-72, 46 N.E.2d 521, 522 (1943); Flynn v. Growers Outlet, Inc., 307 Mass. 373, 378, 30 N.E.2d 250, 253 (1940); Mellace v. John P. Squire Co., 306 Mass. 515, 517, 29 N.E.2d 26, 28

(1940); Shuler v. Union News Co., 295 Mass. 350, 354, 4 N.E.2d 465, 467 (1936); Holt v. Mann, 294 Mass. 21, 24, 200 N.E. 403, 405 (1936).  The need for proving scienter under this statute was removed by St. 1913, c.687. Holt, 294 Mass. at 24, 200 N.E. at 405.

While violation of Mass. G.L. c.94, §150 is evidence of negligence on the part of the Defendant Wequassett Inn LLP (See Schuler, 295 Mass. at 354-355, 4 N.E.2d at 467), the Plaintiffs contend that its violation should also give rise to liability under Mass. G.L. c.93A, since Courts tend to hold purveyors of food to high standards of care because of the serious consequences to human life of their conduct.  Flynn v. First National Stores, 296 Mass. 521, 523, 6 N.E.2d 814, 815 (1937) and cases cited therein.

## IV.  **CONCLUSION**

For the reasons stated herein, the Plaintiffs, Stephen Gascoigne and Kelly Gascoigne, Individually, And As Mother And Next Friends Of AD.G. And AB.G., Both Minors, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, hereby request the entry of partial summary judgment against the Defendant Wequassett Inn LLP (a registered limited liability partnership, by and through its individual partners), d/b/a The Wequassett Inn Resort And Golf Club on the Plaintiff's first and second causes of action and on the issue of causation.

                                          Respectfully submitted,

                                          _____
                                          Donald L. Gibson, Esquire
                                          BBO No. 191030
                                          DRISCOLL & GIBSON
                                          1000 Plain Street
                                          Marshfield, MA 02050
                                          781-837-6115
                                          Attorneys for the Plaintiffs,
                                          Stephen Gascoigne And Kelly Gascoigne,
                                              Individually, And As Mother And Next
                                              Friend Of Ad.G. And Ab.G, Both Minors

Dated: