UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN GASCOIGNE AND KELLY GASCOIGNE, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF AD.G. AND AB.G., BOTH MINORS,<br><br>    Plaintiffs,<br><br>vs.<br><br>WEQUASSETT INN LLP (a registered limited liability partnership, by and through its individual partners), d/b/a THE WEQUASSETT INN RESORT AND GOLF CLUB<br><br>    Defendant. | C.A. NO. 04 CV 11168 JLA |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW ON THE ADMISSIBILITY OF THE INVESTIGATIVE REPORT, RECORDS, STATEMENTS, AND DATA COMPILATIONS OF THE MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH**

I. <u>ARGUMENT</u>

I.A. The Investigative Records, Reports, Statements, And Data Compilations Prepared By The Massachusetts Department Of Public Health Are Admissible Pursuant To Fed. R. Evid. 803(8)(B) and (C) As Exceptions To The Hearsay Rule Since They Embody Factual Findings And Conclusions Resulting From An Investigation Made Pursuant To Authority Granted By Law And Matters <u>Observed Pursuant To A Duty Imposed By Law</u>

The Defendant Wequassett Inn LLP is much mistaken when it argues in its opposition to Plaintiffs' Motion For Partial Summary Judgment that the investigative reports, records, statements, and data compilations of the Massachusetts Department of Public Health (hereinafter, MPH) (Plaintiffs' Exhibits 3 and 4) are not admissible in support of a motion for partial summary judgment on the grounds that they are or contain hearsay. Said records, reports, statements, and

data compilations, as well as the factual findings and conclusions they contain, are admissible pursuant to Fed. R. Evid. 803(8)(B) and (C) since they resulted from an investigation made by a public agency pursuant to authority granted by law.

Fed. R. Evid. 803(8)(B) and (C) provide in pertinent part [1] an exception to the hearsay rule for reports or records of public offices or agencies setting forth factual findings resulting from an investigation made pursuant to authority granted by law. Such matters are presumptively admissible by virtue of their being based in legal authority and duty unless the sources of information or circumstances indicate a lack of trustworthiness. This exception is based upon the assumption that public officials will perform their duties properly and the unlikelihood that they will remember details independently of the record or report. Advisory Committee's Note to Rule 803 of the Federal Rules of Evidence.

The MDH reports, records, findings, and conclusions upon which the Plaintiffs rely in this case clearly satisfy the prima facie elements for admissibility contained with Rule 803(8)(B) and (C). First, the MPH is a public agency of the Commonwealth of Massachusetts created pursuant to statute. See Mass. G.L. c.17, §1 et seq. Second, the MPH reports, records, statements, and data compilations which the Plaintiffs offer contain factual findings and conclusions from an investigation it made of the Wequassett Inn Salmonella outbreak pursuant to authority granted by law. Mass. G.L. c.111, §7 empowers the MPH to conduct an investigation into the existence or likely existence of any contagious or infectious disease declared by the department to be dangerous to the public health and mandates that it consult thereon with the local authorities, in

---

[1] Rule 803 provides that the following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> (8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

this case with Harwich Board of Health, which it did. Mass. G.L. c.111, §7, also confers upon MPH "co-ordinate powers as a board of health".

Rule 803(8)(C) provides that investigative reports of a public agency are inadmissible only if the sources of information or other circumstances indicate lack of trustworthiness. Courts construing and interpreting Rule 803(8)(C) have imposed the burden of proving untrustworthiness on the party opposing the use of an investigative report of a public agency. See, e.g. Beech Aircraft Corp. v. Rainey, 488, U.S. 153, 109 S. Ct. 439, 102 L.Ed. 445 (1988); Baker v. Elcona Homes Corp., 588 F.2d 551, 558 (6th Cir. 1978); and Schwartz v. United States, 149 F.R.D. 7, 11 (D. Mass. 1993).

As with any exception to the hearsay rule, Rule 803(8)(C) is to be applied in a common-sense manner, and the determination of trustworthiness is a matter subject to the sound discretion of the Court. See, e.g., Puerto Rico Ports Authority v. M/V Manhattan Prince, 897 F.2d 1, 8 (1st Cir. 1990). Among the factors listed by The Adversary Committee's Note to Rule 803 that may be of assistance in determining the trustworthiness of investigative reports of public agencies are: (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which it was conducted; and (4) possible motivation problems. While no formal hearing was conducted by the MPH in the case at bar, its investigation of the Salmonella enteritidis outbreak was timely, its motivation unquestioned and unbiased, and its public health expertise unchallenged. For example, in his deposition testimony, William Brodsky, the Defendant's executive chef at the time of the Salmonella enteritidis outbreak agreed with the MPH conclusion that the infectious agent at work was a food borne illness and that the specific food borne illness in question was Salmonella enteritidis. [Exhibit 13, P43, L9 - P46, L17] Mr. Brodsky went on to agree with the conclusion of the MPH that the mechanism by which the Salmonella enteritidis was acquired by those who claimed to be ill was either (1) contamination

during food preparation or service by a food handler or (2) was present in the food that was served at both functions.  [Exhibit 13, P46, L18-P47, L2]

Investigative reports, records, statements, and data compilations of public health agencies have been held admissible under Rule 803(8)(C) here in the District of Massachusetts.  In the leading case of <u>Sabel</u> v. <u>Mead Johnson & Co.</u>, 737 F. Supp. 135, 140-144 (1990), Judge Wolf of this very Court held that a letter from a director of the Food and Drug Administration to the defendant in an action for negligence and breach of warranty concerning warning for its medication, which recommended that a boxed warning be included in the medication's label to emphasize the risk of priapism, the potential need for surgery, and the threat of impotence, was admissible under Rule 803(8)(C) of the Federal Rules of Evidence because the director's opinion was based on a factual investigation of the association between the medication and priapism. Judge Wolf said that it made no difference that the underlying data were collected by and received from an outside party, as long as the information was reliable.  In the instant case, he observed, the information was derived from an article in a peer-reviewed medical journal, which in turn relied on data obtained from the defendant itself.  He also noted that further investigation would only have disclosed more cases of priapism and concomitant surgery and thus would not have changed the FDA's conclusions, and there was no reason to believe that director was biased in his investigation or assessment or that he ignored evidence or sources that would have altered his opinion.  Judge Wolf observed that although the letter was issued some six months after publication of the professional journal article on which it relied, it was possible that it took that long for the FDA director to receive and analyze the piece, and moreover, the danger in the case before him was not that the FDA's investigation was based on stale evidence, but that it relied on more data than were relevant to the instant case.  Judge Wolf further found that the expertise of the FDA director and his staff could not reasonably be questioned, observing that even though the personal qualifications of the FDA personnel were not in evidence, they performed one of the

central tasks assigned to them by law in recommending precautionary labeling changes. In addition, Judge Wolf pointed out that although the factual investigation underlying the letter and the evaluation expressed therein were not as scientifically objective as the epidemiological studies or air crash investigations more usually found in Rule 803(8)(C) cases, the matters in question were trustworthy. He also said that, although no hearing was held before the letter was issued, the evidence suggested that the defendant and the FDA had discussed other label changes relating to the medication and the risk of priapism in the past; the defendant's regulatory personnel apparently communicated closely with the FDA about labeling, often receiving information orally and having an opportunity to comment before receiving written communications. Judge Wolf also determined that the report was not prepared in the context of litigation, and there was no reason to suspect bias on the part of the FDA.

Similar results have been reached in other federal jurisdictions regarding the admissibility of public health agency investigative reports, records, case studies or data compilations. Case control studies regarding Toxic Shock Syndrome (TSS) conducted by the United States Center for Disease Control (CDC) and state health departments were held admissible under Rule 803(8)(C) of the Federal Rules of Evidence by the court in Wolf by Wolf v. Procter & Gamble Co., 555 F. Supp. 613 (D.N.J. 1982). Denying the defendants' motion to exclude the studies from evidence in the plaintiffs' action seeking compensatory and punitive damages for TSS contracted by a plaintiff, allegedly caused by tampons manufactured and distributed by the defendants, the Court rejected the defendants' argument that the studies based on diagnostic opinion, did not constitute "factual findings," observing that public records or reports containing opinions and evaluations are admissible under Rule 803(8)(C).

Likewise, the Court in Ellis v. International Playtex, Inc., 745 F.2d 292 (4th Circ. 1984), agreed with the plaintiff in an action against a tampon manufacturer for the death of his wife, allegedly caused by toxic shock syndrome, that two epidemiological studies authored by the

5

federal Center for Disease Control (CDC) and an epidemiological study supervised by the Wisconsin, Minnesota, and Iowa state health departments were admissible under Rule 803(8)(C) of the Federal Rules of Evidence.  The studies, which the plaintiff sought to introduce to prove that toxic shock syndrome was causally related to tampon use, indicated that a statistically significant link existed between tampon use and toxic shock syndrome. The Court stated that the studies were carried out by public offices pursuant to authority granted by law, noting that the CDC is a branch of the United Stated Department of Health and Human Services, and the tri-state study was conducted by members of the Wisconsin, Minnesota, and Iowa Departments of Health. Moreover, the Court found, the studies consisted of data compilations setting forth factual findings.  The Court expressed its belief that scientific reports should not be treated any differently from other public findings of fact under a Rule 803(8)(C) analysis, reasoning that in the case before it the rationale behind the rule -- that a public official will perform a duty properly and will be unlikely to remember details independently of the record -- argued strongly for the admission of the contested studies.

Recognizing that the Courts construing the term "factual findings" in Rule 803(8)(C) of the Federal Rules of Evidence have given it broad scope, the Court in <u>Kehm</u> v. <u>Procter & Gamble Mfg. Co.</u>, 724 F.2d 613 (8th Cir. 1983), rejected the argument that epidemiological studies conducted by the federal Center for Disease Control (CDC) and various state health departments, which were reported in the CDC's Morbidity and Mortality Weekly Report, regarding the correlation between Toxic Shock Syndrome (TSS) and the use of tampons such as those manufactured by the defendant did not constitute factual findings under Rule 803(8)(C) because they rested on medical opinions and diagnoses, and because the government officials conducting the studies did not have firsthand knowledge of the data they collected.  The reports were admitted by the District Court in the plaintiff's product liability action alleging that tampons manufactured by the defendant were responsible for the death of the plaintiffs' decedent from TSS.  The Court

pointed out that government reports setting forth agency opinions and conclusions have often been admitted on the ground that such reports, because they are public records based on investigations conducted pursuant to lawful authority, are presumptively reliable.  That is, the Court concluded, there is no reason not to admit findings simply because they tend towards the conclusory rather than the factual end, unless, as Rule 803(8)(C) further provides, the sources of information or other circumstances indicate lack of trustworthiness.

Other courts have found the following records, studies, reports, and data compilations presumptively admissible under Rule 803(8)(C) of the Federal Rules of Evidence:

- epidemiological studies conducted by the federal, state, and Australian governments showing the absence of any causal connection between a chemical -- Agent Orange -- and illnesses suffered by Vietnam veterans who were exposed to the chemical.  In re Agent Orange Product Liability Litigation, 611 F. Supp. 1267 (E.D. N.Y. 1985), decision aff'd on other grounds, 818 F.2d 187 (2d Cir. 1987), cert. denied, 487 U.S. 1234, 108 S. Ct. 2898, 101 L.Ed. 2d 932 (1988); In re Agent Orange Product Liability Litigation, 611 F. Supp. 1223, (E.D. N.Y. 1985), and decision aff'd on other grounds, 818 F.2d 187 (2d Cir. 1987), and judgment aff'd in part, rev'd in part on other grounds 818 F.2d 179 (2d Cir. 1987) and judgment aff'd in part, vacated in part on other grounds, 818 F.2d 210 (2d Cir. 1987) and judgment aff'd on other grounds, 818 F.2d 204 (2d Cir. 1987) and decision aff'd on other grounds, 818 F.2d 187 (2d Cir. 1987).

- formal findings made by a special board of inquiry established by a city department of buildings to report on the collapse of a derrick on the roof of an office building under construction, which causes pieces of stone to shower onto a sidewalk, killing a passerby and injuring 16 other persons.  Haas v. Tishman Const. Corp. of New York, 1987 WL 5792 (S.D. N.Y. 1987).

- meeting minutes of the FDA that contained factual findings by the FDA concerning one pharmaceutical company's efficacy for breast cancer prevention, in an action between two pharmaceutical companies; their admissibility was based on, among other things, a finding that the FDA has the authority to, and routinely does, evaluate clinical data submitted by pharmaceutical companies.  Zeneca Inc. v. Eli Lilly and Co., 1999-2 Trade Cas. (CCH) ¶72603, 1999 WL 509471 (S.D. N.Y. 1999).

- a conclusion in a report of a state health department that tuna fish salad served at an event was the likely vehicle for transmission of shigellosis in a negligence suit against the caterer, where the investigation was conducted within a week to 10 days of the shigellosis outbreak, the investigators were experts in the field of health and epidemiology, and epidemiological analysis showed a strong association between the tuna fish salad and infection with shigellosis.  Gross v. King David Bistro, Inc., 84 F. Supp. 2d 675 (D. Md. 2000).

- records of the Consumer Products Safety Commission (CPSC), including laboratory test results prepared by CPSC technicians and reviewed by the director of the laboratory with respect to compliance of certain fireworks with limits on pyrotechnic powder and a compliance assessment worksheet prepared by the responsible CPSC compliance officer determining whether the devices violated the regulations, in an action to enjoin the sale of the fireworks, as they were compiled by a public agency and included factual findings resulting from an investigation made pursuant to authority granted by law, and the CPSC regularly prepares reports of violative fireworks irrespective of whether enforcement of those determinations results in litigation.  U.S. v. Midwest Fireworks Mfg. Co., Inc., 248 F.3d 563 (6th Cir. 2001).

- inasmuch as they were prepared pursuant to a legal obligation, reports of the Surgeon General on smoking and health were admissible in products liability suit against tobacco company pursuant to the public records exception to the hearsay rule.  Fed. Rules Evid. Rule 803(8).  Boerner v. Brown & Williamson Tobacco Co., 394 F.3d 594 (8th Cir. 2005).

## II.  CONCLUSION

For the reasons stated herein, the investigative reports, records, statements, and data compilations of the Massachusetts Department of Public Health (Plaintiffs' Exhibits 3 and 4) in his case are admissible pursuant to Fed. R. Evid. 803(8)(B) and (C) as exceptions to the hearsay rule.

    /s/ Donald L. Gibson
Donald L. Gibson, Esquire
BBO No. 191030
DRISCOLL & GIBSON
1000 Plain Street
Marshfield, MA 02050
781-837-6115
Attorneys for the Plaintiffs,
Stephen Gascoigne And Kelly Gascoigne,
    Individually, And As Mother And Next
    Friend Of Ad.G. And Ab.G, Both Minors