UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STEPHEN GASCOIGNE AND KELLY GASCOIGNE, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF AD.G. AND AB.G., BOTH MINORS, | ) ) ) ) ) | C.A. NO. 04 CV 11168 JLA |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| WEQUASSETT INN LLP (a registered limited liability partnership, by and through its individual partners), d/b/a THE WEQUASSETT INN RESORT AND GOLF CLUB | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

<u>PLAINTIFFS' FIRST SUPPLEMENT TO PLAINTIFFS' ORIGINAL DESIGNATIONS OF ANTICIPATED TRIAL EXPERTS IN ACCORDANCE WITH FED. R. CIV. P. 26</u>

In accordance with the Parties' Amended Scheduling Order dated April 6, 2005, as extended by agreement between counsel, as well as Fed. R. Civ. P. 26(a)(2), Local Rule 26.4, and Local Rule 16.5, the Plaintiffs hereby further supplement their initial disclosure and designations dated October 14, 2005, concerning anticipated expert witnesses at trial:

    (1)    Elizabeth L. Hohmann, M.D.
                Infectious Disease Division
                Gray J504
                Massachusetts General Hospital
                55 Fruit Street
                Boston, MA 02114
                [Infectitious Disease]
                (A copy of Dr. Hohmann's curriculum vitae has already been provided)

<u>Initial Designation and Disclosure dated October 14, 2005</u>:

At trial, Dr. Hohmann is expected to testify that the Plaintiff Stephen Gascoigne contracted Salmonellosis as the result of consuming contaminated or tainted food at the Wequassett Inn on July 6, 2001.  Dr. Hohmann will testify that (a) the Plaintiff's immediate and early symptoms, as well as those of other persons who became ill at the two functions in question, are totally consistent with Salmonellosis, (b) the attack rate of those attending the wedding and the investment conference was high, and (c) there is no credible factual or medical information to suggest that some other infectious agent was present at the Dien/Dupont wedding reception dinner.  In reaching her conclusions and in giving her anticipated trial testimony, Dr. Hohmann will rely, in part, among other things, upon the (i) investigation, findings, conclusions, and observations of the Town of Harwich Board of Health and the Massachusetts Department of Public Health contained in the report of the Massachusetts Department of Public Health Report dated October 1, 2001; (ii) the PHAGE typing results from the Centers for Disease Control and Prevention identifying the infectious agent isolated from the Wequassett Inn food handlers, the members of the Dien/Dupont wedding party and guests who became ill, and the investment conference attendees as Salmonella enteritidis phage type 8; (iii) the medical records of Stephen Gascoigne; and (iv) the testimony and interrogatory answers of Stephen Gascoigne.

This is the first time that she will testify as a medical expert at trial.  She has not previously testified at deposition.

<u>Plaintiffs' First Supplemental Disclosure dated March 29, 2006</u>:

In the event that Plaintiffs' motion for entry of partial summary judgment dated January 9, 2006 is granted as to liability and causation, it is unlikely that Dr. Hohmann will testify at trial.

(2)    Bernadette Van Belois, M.D.
Tamarack Medical Clinic
1280 Burns Way
Kalispell, MT
[Rheumatology]
(A copy of Dr. Van Belois' curriculum vitae has already been provided)

Initial Designation and Disclosure dated October 14, 2005:

Dr. Van Belois is a subsequent treating physician of the Plaintiff Stephen Gascoigne.  She will testify concerning her physical findings, her course of medical treatment and his prognosis, as well as Mr. Gascoigne's symptoms, complaints, and test results, including x-rays.  Copies of Dr. Van Belois' medical records and reports concerning the Plaintiff have already been provided to defense counsel and the information they contain is incorporated hereby by reference. Among the anticipated opinions Dr. Van Belois will offer at trial are the following:

(a)  The Plaintiff suffers from reactive arthritis, Reiter's type, as a direct and proximate result of contracting Salmonella enteritis at the Dien/Dupont wedding reception and dinner on July 6, 2001;

(b)  The Plaintiff's reactive arthritis is progressive;

(c)  The Plaintiff has tried Ibuprofen, Doxycycline, Cipro, Naprosyn, Etodolac, Sulfasalazine, Methotrexate, Oxaporzin, Prednisone, and Enbrel, all in an effort to control his reactive arthritis, to reduce his joint inflammation, and to maintain as much functional ability and range of motion as possible;

(d)  The side effects of these various medications have adversely impacted the Plaintiff's activity level, quality of life, his anxiety level, his personality, and his intra-familial relationships;

(e)  The Plaintiff's reactive arthritis has progressed to a chronic and a permanent rheumatic condition that will be characterized by a gradual loss of functional ability and gradual loss of range of motion over the course of his remaining lifetime with painful intermittent flare-ups or exacerbations of his arthritic condition; and

(f)  The Plaintiff will require medical treatment in the future for his reactive arthritis.  Said treatment will consist of periodic office visits, diagnostic testing, and appropriate medication.

Dr. Van Belois' curriculum vitae is attached here.  She has limited experience testifying in legal matters.  She has given deposition testimony in the following Montana cases during the past four years:

| Date of Deposition | Name of Case | Location of Deposition |
|---|---|---|
| 5/3/2005 | Sharon Warren, James Warren and Watkins Motor Lines v. Utah Department of Transportation, Vex-com Chemical and John Doe Companies | Tamarack Medical Clinic 150 Commons Way Kalispell, Montana |
| 9/9/2003 | Michele Sickmann v. Edward Paul James and Kyle Whaley | Tamarack Medical Clinic 1280 Burns Way Kalispell, Montana |
| 3/5/2003 | John Guyman vs. Montana State Fund | Tamarack Medical Center 1280 Burns Way Kalispell, Montana |
| 8/8/2002 | Bradley P. Wirz and Sandra Wirz, Individually and as Co-Guardians Ad Litem of Breeanna Byker, Christopher Byker, and Mercedes Wirz, minors, vs. Tracy Diane Murphy | Tamarack Medical Center 1280 Burns Way Kalispell, Montana |

Plaintiffs' First Supplemental Disclosure dated March 29, 2006:

Dr. Van Belois examined the Plaintiff Stephen Gascoigne again on February 22, 2006.  Following said appointment, Dr. Van Belois prepared a report dated February 22, 2006, addressing Stephen Gascoigne's reactive arthritis and his future medical course.  A copy of her report was furnished to defense counsel on March 6, 2006.  Among the significant observations, opinions, and conclusions are the following:

(a)    The Plaintiff's reactive arthritis will result in a slowly progressive decrease in functional ability;

(b)    The future pattern of his arthritis will likely be one of intermittent flare-ups interspersed with periods of less disease-related activity.  However, at no time in the future progression of his reactive arthritis will he be symptom free;

(c)    The Plaintiff has already demonstrated boney enlargement of his left lateral epicondyle (elbow) as a result of enthesopathy from his reactive arthritis, along with boney enlargements of his left 5th PIP joint and his right 3rd PIP joint as a result of his reactive arthritis, all of which evidences permanent bone/joint damage;

(d)    There is no known cure for reactive arthritis.  It is a chronic condition that the Plaintiff will be dealing with for the rest of his life;

(e)    The Plaintiff will require ongoing treatment indefinitely with adalimumab (Humira) or similar biologic agents at an average cost per month in the range of $1,200.00 to $2,400.00, depending on dosage requirements.  Such medications will make it difficult for the Plaintiff to mount an adequate response to infection, and the Plaintiff will have to discontinue therapy when acutely infected, which will in turn cause his arthritic condition to flare up; and

(f)    The Plaintiff's reactive arthritis has affected and will affect his choice of occupation, his recreational activities, his household activities, and his interaction with his children.

(3)    Robert Kowalewski, M.D.
Department of Rheumatology
University of Washington Medical Center
1959 N.E. Pacific Street
Seattle, WA 98195
[Rheumatology]

Initial Designation and Disclosure dated October 14, 2005:

Dr. Kowalewski is a subsequent treating physician whom the Plaintiff Stephen Gascoigne saw in Seattle, Washington, on December 17, 2002; January 28, 2003; and April 1, 2003.  Dr. Van Belois and Dr. Bluestone will rely in part or to some extent on Dr. Kowalewski's physical findings and his course of treatment of the Plaintiff, as well as the Plaintiff's symptoms, complaints, and test results, including x-rays, all as set forth in his medical records and reports.  Copies of Dr. Kowalewski's medical records and reports concerning the Plaintiff have already been provided to defense counsel, and the information they contain is incorporated herein by reference.  Should he

actually testify at trial, among the anticipated opinions Dr. Kowalewski will offer are the

following:

(a)  The Plaintiff, when seen by Dr. Kowalewski, was suffering from reactive arthritis; and

(b)  The reactive arthritis from which the Plaintiff suffered was active at the time he was

seen by Dr. Kowalewski.

(4)    Rodney Bluestone, M.D.
       436 N. Bedford Drive
       Suite 303
       Beverly Hills, Ca 90210
       [Rheumatology]
       (A copy of Dr. Bluestone's curriculum vitae has already been provided)

Initial Designation and Disclosure dated October 14, 2005:

Dr. Bluestone is a subsequent treating physician to whom the Plaintiff Stephen Gascoigne

went for a third medical opinion and from whom the Plaintiff has sought more aggressive

treatment for his reactive arthritis.  At trial, it is anticipated that Dr. Bluestone will testify as to his

physical findings, his course of treatment of the Plaintiff, and the Plaintiff's prognosis, as well as

the Plaintiff's symptoms, complaints, and test results, including x-rays.  Copies of Dr. Bluestone's

medical records and reports concerning the Plaintiff have already been provided to defense

counsel, and the information they contain is incorporated herein by reference.  Among the

anticipated opinions Dr. Bluestone will offer at trial are the following:

(a)  The commonest cause for reactive arthritis is following gastrointestinal infection;

(b)   The Plaintiff is suffering from reactive arthritis post-infectious in etiology;

(c)  The Plaintiff's reactive arthritis most probably arose as a result of a gastrointestinal

infection he incurred on July 6, 2001, at the Dien-Dupont wedding reception and dinner;

(d)  The Plaintiff's reactive arthritis has evolved into a chronic sero-negative

spondylaropathy;

6

(e)  The Plaintiff had active inflammation present in several joints when examined by Dr. Bluestone;

(f)  The Plaintiff has already demonstrated signs of early erosive joint destruction;

(g)  The Plaintiff is not suffering from typical overuse syndrome; and

(h)  As a result of the gastrointestinal infection the Plaintiff suffered, the Plaintiff has developed chronic rheumatic disease.

Dr. Bluestone is scheduled to see the Plaintiff again on October 26, 2005.  Additional observations, conclusions, and opinions may be forthcoming from that office visit.

<u>Plaintiffs' First Supplemental Disclosure dated March 29, 2006</u>:

Dr. Bluestone saw the Plaintiff again on October 26, 2005, and a copy of his office note for that visit has already been supplied to defense counsel.  The information it contains is incorporated herein by reference.  Following his examination of the Plaintiff, Dr. Bluestone prepared an affidavit dated December 16, 2005, which was attached as Exhibit No. 8 to the Affidavit of Donald L. Gibson, Esquire, dated January 9, 2006, which was submitted to the Court in support of Plaintiffs' Motion For Partial Summary Judgment On The Plaintiffs' First And Second Causes Of Action And On The Issue Of Causation.  In his affidavit, Dr. Bluestone expressed the following observations, conclusions, and opinions:

(a)    The Plaintiff Stephen Gascoigne is suffering from reactive arthritis, which is post-infectious in etiology;

(b)    The Plaintiff's reactive arthritis was caused by consumption of contaminated food, on July 6, 2001, at the Wequassett Inn wedding party;

(c)    The Plaintiff is not suffering from typical overuse syndrome;

(d)    The Plaintiff's reactive arthritis has evolved into a chronic, sero-negative spondylarthropathy ("Reiter's Syndrome"), now for over four years in duration;

7

(e)    The Plaintiff's reactive arthritis is progressive and chronic in nature.  As of the Plaintiff's last examination of October 26, 2005, he is symptomatic, due to the reactive arthritis, with significant and widespread arthralgias.  The reactive arthritis has caused musculoskeletal dysfunction, affecting his hands (particularly as to his right, major hand), left elbow (with new periosteal bone formation at the lateral epicondyle), shoulders, mid-back, right hip, right knee, left ankle and right great toe.  The chronic pain has affected his sleep pattersn;

(f)    The Plaintiff's treatment has progressed from conservative analgesics and anti-inflammatory medications to the chemotherapeutic administration of Methotrexate, Enbrel, and now, Humira.  Although Dr. Bluestone's diagnosis of progressive reactive arthritis continues, the manifestation of symmetrical articular pain in the metacarpophalangeal joints, coupled with an emerging (but currently weekly) positive test for rheumatoid factor by ELISA testing in the IgA moiety, now raises the concern for future rheumatoid arthritis.  Dr. Bluestone's treatment plan contemplates at least another full year on anti-tumor necrosis factor therapy.

(5)    Dana C. Hewins, Ph.D.
One Tamett Brook Road
Lakeville, MA 02347
[Economist]
(A copy of Dr. Hewins' curriculum vitae is attached hereto)

Initial Designation and Disclosure dated March 29, 2006:

Dr. Hewins is an economist whom the Plaintiff Stephen Gascoigne retained to calculate the present value of the future cost of his reactive arthritis medication based upon Dr. Van Belois' opinion expressed in her report dated February 22, 2006, that the Plaintiff will require ongoing treatment indefinitely with adalimumab (Humira) or similar biologic agents at an average cost per month in the range of $1,200.00 to $2,400.00, depending on dosage requirement.  Dr. Hewins has prepared a report dated March 21, 2006, concerning his calculations, analysis, conclusions, and methodology.  It is attached hereto and is incorporated herein by reference.

In preparing his report, Dr. Hewins relied on the following factual information and factual assumptions:

> Stephen Gascoigne was born on December 29, 1968, and is currently 37 years old. His arthritis medication (currently Humira) now costs from $1,200.00 to $2,400.00 per month. On an annual basis, this implies current costs ranging from $14,400.00 to $28,800.00, assuming the medication is taken for 12 months per year. Because Mr. Gascoigne cannot take his medication during times of illness, however, he may not incur these expenses for 12 months every year. For purposes of this evaluation, therefore, present values were calculated for 9, 10, 11, and 12 months per year.

In performing his calculations and analysis, Dr. Hewins reduced all projected future medication expenses to present value by using a nontaxable discount rate of 2.0%. The 2.0% real discount rate used by Dr. Hewins is well within the 1% to 3% range which the U.S. Supreme Court found to be reasonable in Jones & Laughlin Steel Corporation v. Pfeiffer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed. 2d 768 (1983). The real (inflation-adjusted) growth rate ultimately selected by Dr. Hewins was 2.5% per year. Having established an appropriate growth rate, the Plaintiff's future medication expenses were projected from July 1, 2006, to the end of his statistically expected lifetime. According to the most recent life expectancy tables published by the U.S. Department of Health and Human Services, National Center for Health Statistics, a 37 year old male has a future anticipated life expectancy of 40.1 years

Given Dr. Hewins' methodology and his parameters, and employing a real nontaxable discount rate of 2%, the present values of Stephen Gascoigne's future medication expenses were determined by Dr. Hewins to be as follows:

|  | Present values @ $1,200.00 per month | Present values @ $2,400.00 per month |
|---|---|---|
| If 9 months per year: | $ 445,554.00 | $ 891,107.00 |
| If 10 months per year: | $ 495,060.00 | $ 990,119.00 |

9

| | | |
|---|---|---|
| If 11 months per year: | $ 544,566.00 | $1,089,131.00 |
| If 12 months per year: | $ 594,072.00 | $1,188,143.00 |

All of these present values were calculated as of June 2, 2004, the date of filing of the complaint.

These present values do <u>not</u> include any medical expenses incurred prior to July 1, 2006.

In addition to and accompanying his report of March 21, 2006, Dr. Hewins also provided a letter dated March 22, 2006, setting forth his current hourly billing rate for professional services, his fee for appearances at trial or deposition, and  a list of his publications within the past ten years, as well as a list of the depositions and trials at which he has testified in the past four years. They too are attached to this designation/disclosure, and their contents are incorporated herein by reference.  Copies of these documents and Dr. Hewins' report have already been furnished to defense counsel.

   /s/ Donald L. Gibson, Esquire
Donald L. Gibson, Esquire
BBO No. 191030
DRISCOLL & GIBSON
1000 Plain Street
Marshfield, MA 02050
781-837-6115
Attorney for the Plaintiffs,
Stephen Gascoigne And Kelly Gascoigne,
   Individually, And As Mother And Next
   Friend Of Ad.G. And Ab.G, Both Minors

Dated:  March 29, 2006