UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11168-JLA

STEPHEN GASCOIGNE
and KELLY GASCOIGNE,
Individually and as Mother and Next Friend
of AD.G. and AB.G., both minors,

Plaintiffs

v.

WEQUASSETT INN LLP,
d/b/a THE WEQUASSETT INN
RESORT AND GOLF CLUB

Defendants

**ORDER ON**

**PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ON THE PLAINTIFFS'
FIRST AND SECOND CAUSES OF ACTION
AND ON THE ISSUE OF CAUSATION**
(Docket # 26)

ALEXANDER, M.J.

The plaintiffs in this case, Stephen and Kelly Gascoigne, allege that as a result of improper food handling at the Wequassett Inn (the "Inn"), owned by defendant Wequassett Inn LLP, a salmonella outbreak occurred on July 6, 2001,

causing Mr. Gascoigne to become violently ill and develop reactive arthritis. The Gascoignes were attending a wedding at the Inn on that date.

The Gascoignes have moved for partial summary judgement on two of the three claims raised in their complaint: breach of warranty, pursuant to G. L. c. 106 § 2-314(1) and violation of G. L. c. 93A. They have not moved for summary judgment on the negligence claim also included in their complaint. The Court held a hearing on the motion on March 20, 2006. After consideration of the parties' asseverations, both oral and written, and for the reasons set forth more fully below, the Court ALLOWS the Gascoigne's motion for summary judgment.

**BACKGROUND**

On July 6, 2001, the Gascoignes attended a wedding at the Inn on Cape Cod. The following evening, July 7, 2001, Mr. Gascoigne became violently ill, experiencing shaking, fever, chills, diarrhea, extreme abdominal cramps, burning in his mouth, body cramping, and blood in his stool. These symptoms lasted for several days and Mr. Gascoigne did not eat a meal again until July 15.

On July 9, 2001, the Inn began to receive complaints of illness from individuals who had attended the wedding as well as individuals who had attended another function at the Inn, an investment conference, the same night as the wedding. The Gascoignes did not learn that other individuals had also become

sick, and experienced symptoms similar to Mr. Gascoigne, until the Gascoignes returned home to Montana on July 16, 2001.

The Massachusetts Department of Public Health (MDPH) and the Harwich Board of Health (HBH) investigated the complaints and determined that there had been a salmonella outbreak at the Inn. MDPH and HBH concluded that either a bernaise sauce, served at both the wedding and the investment conference dinner, was made wholly or in part with unpasteurized eggs contaminated with salmonella enteritidis, or that food handlers at the Inn were already infected with salmonella and that the food was contaminated through one or more of the food handlers.

Several months after the wedding, on October 31, 2001, Mr. Gascoigne saw a rheumotologist because he had been experiencing aches and pains in certain joints ever since becoming sick following the wedding. Mr. Gascoigne was diagnosed with reactive arthritis. Diagnoses from two other doctors, in 2002 and 2003, confirmed the diagnosis of reactive arthritis, probably resulting from salmonella poisoning.

In July 2004, after the commencement of the extant litigation, Mr. Gascoigne was examined by a rheumotologist, Dr. Robert Kalish, hired by the defendants. Dr. Kalish concluded that a "diagnosis of salmonella induced reactive arthritis is probable."

## ANALYSIS

**Summary Judgment Standard**

The parameters in which this Court considers a motion for summary judgment are well-defined and familiar. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotations omitted). The party moving for summary judgment bears responsibility for showing those portions of the discovery record that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

After the moving party has fulfilled this obligation, the burden shifts to the non-moving party to demonstrate that a trier of fact reasonably could find in its favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25); Ismert & Assoc., Inc. v. New England Mut. Life Ins. Co., 801 F.2d 536, 537 (1st Cir. 1986) (describing the non-moving party's burden as one of demonstrating that there is a need for further exploration of the facts). A party

opposing a motion for summary judgment may not rest on mere allegations or denials, but rather, must show that specific facts illustrate a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In reviewing a motion for summary judgment and the materials offered to support the motion, the role of the Court is not to engage in an analysis of whose evidence is more compelling or credible. Cetronics Fin. Corp. v. El Conquistador Hotel Corp., 573 F.2d 779, 782 (2d Cir. 1978); Peckarsky v. Am. Broad. Co., Inc., 603 F. Supp. 688, 692 (D.D.C. 1984). "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence." Anderson, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. at 255. See also Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 71-72 (D. Mass. 1998); Barretto-Rivera v. Medina-Vargas, 168 F.3d 42, 47 (1st Cir. 1999) ("speculation adverse to the nonmoving party is inappropriate on a motion for summary judgment"); Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (in reviewing motions for summary judgment, "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). With these parameters in mind, the Court turns to the parties assertions.

**Breach of Warranty**

G. L. c. 106, § 2-314, Implied Warranty: Merchantability; Usage of Trade, states, in pertinent part that:

> (1) . . . a warranty that . . . goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

For goods to be merchantable they must be, among other things, "fit for the ordinary purposes for which such goods are used . . . ." G. L. c. 106, § 2-314(2)(c). Food that is contaminated and causes illness in those who consume it is not fit for its ordinary purpose. Cf. Friend v. Childs Dining Hall Co., 231 Mass. 65, 71, 120 N.E. 407, 409 (Mass. 1918) ("Food for immediate use which is not fit to eat is not merchantable as food."). The defendants allowed at the March 20 hearing that they do not contest the applicability of the warranty; nor do they contest the fact that numerous individuals who attended the wedding and the investment conference became ill. The only question before this Court, therefore, is whether the defendants are responsible for the contamination to the food.

The plaintiffs need only show that the "probable" cause of Mr. Gascoigne's illness was the food served by the defendants. Flynn v. Growers Outlet,

6

307 Mass. 373, 376, 30 N.E.2d 250, 252 (Mass. 1940). "[T]hey [a]re not obliged to exclude every other possible cause." Id. In support of their position that Mr. Gascoigne's illness was caused by the defendants, the plaintiffs rely heavily on two memoranda prepared by MDPH. In the first memorandum, dated October 1, 2001, the MDPH details its investigation and the results of that investigation. Affidavit of Donald L. Gibson ("Gibson Affidavit") Ex. 3. 46 out of 80 wedding guests who responded to questions from the MDPH reported being sick and 15 out of 34 of the conference attendees also reported being sick. 18 stools were "culture confirmed" as salmonella enteritidis ("SE") positive and . . . [t]he combination of clinical illness, epidemiological analysis, laboratory and environmental findings are consistent with a food borne outbreak of SE infection." Ex. 3 at 2.

The MDPH memorandum also states that there are two possible explanations for the spread of the infection at the wedding and investment conference – either the use of unpasteurized eggs in a bernaise sauce or through one of the food handlers. A second MDPH memorandum, dated December 5, 2001, states that additional findings confirm that the salmonella organism was either introduced through contamination during food preparation or was present in the food served. Gibson Affidavit Ex. 4.

In response to the plaintiffs reliance on the MDPH memoranda, the defendants aver that the memoranda are insufficiently conclusive because the MDPH posits that the salmonella outbreak could have been routed in either of two events. The memoranda clearly state, however, that a salmonella outbreak did occur, and that the individuals affected became sick through the food served by the defendants. There is no question that Mr. Gascoigne became ill as a result of contaminated food that he ate while attending a wedding at the Inn.

The defendants also suggested, at the March 20 hearing, that the food may have been contaminated by some other source, such as by a guest. If that were the case, according the defendants, the defendants would not be liable for Mr. Gascoigne's illness. The defendants do nothing, however, to support this position. They present no evidence so much as suggesting that a guest might have been, or could have been, responsible for contaminating the food; nor do they provide any legal support for their assertion that if a guest did contaminate the food, this would absolve the defendants of responsibility.

Finally, the defendants asseverate that the MDPH memoranda are hearsay and therefore inadmissible to support the plaintiffs' motion for partial summary judgment. The memoranda, however, as the plaintiffs point out, fall under the public records exception to the hearsay rule:

> Records, reports, statements or data compilations . . . of
> public officer or agencies setting forth . . . (B) matters
> observed pursuant to duty imposed by law as to which
> matters there was a duty to report . . . or (C) in civil
> actions and proceedings . . . factual findings resulting
> from an investigation made pursuant to authority granted
> by law, unless the sources of information or other
> circumstance indicate lack of trustworthiness.

Fed. R. Evid. 803(8). A report of a public health agency on its investigation of an illness outbreak clearly falls under the exception granted in Rule 803(8). The memoranda are not inadmissible and the plaintiffs have clearly met their burden of showing that the contaminated food was the probable cause of Mr. Gascoigne's illness. The Court therefore ALLOWS the plaintiffs' motion for summary judgment on the breach of warranty claim.

**Chapter 93A**

In addition to moving for summary judgment on their breach of warranty claim, the plaintiffs also seek summary judgment on their G. L. c. 93A claim. The 93A claim goes hand-in-hand with the breach of warranty claim. "Generally, a breach of warranty constitutes a violation of G. L. c. 93A § 2." Maillet v. ATF-Davidson Co., 407 Mass. 185, 193, 552 N.E.2d 95, 100 (1990). See also Glyptal, Inc. v. Engelhard Corp., 801 F. Supp. 887, 899 (D. Mass. 1992) ("Breaches of express and implied warranties constitute a virtual per se violation of Mass. Gen.

L. ch. 93A, § 2"). Because the Court is allowing the motion for summary judgment on the breach of warranty claim, the Court also ALLOWS the motion for summary judgment on the 93A claim.

SO ORDERED.

5/18/06
Date

_____
United States Magistrate Judge